**UNITED STATE DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**

**Case No.** 3:13-CV-1532-J-20PDB

RICHARD WALKER,

Plaintiff,

v.

JACKSONVILLE SHERIFF'S OFFICE,

Defendant.
_____________________/

2013 DEC 16 AM 9:47
JACKSONVILLE, FLORIDA
Filed

## PLAINTIFF'S COMPLAINT

COME NOW the Plaintiff, RICHARD WALKER ("WALKER" or "Plaintiff") by and through his undersigned counsel and files this lawsuit against Defendant, JACKSONVILLE SHERIFF'S OFFICE ("Defendant" or "JSO") and, in support thereof, states as follows:

## PARTIES AND JURISDICTION

1. This is an action for damages in excess of $15,000.00 pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e, the Civil Rights Act of 1866, 42 U.S.C. §1981, §1981(a), et seq., §1983 and the Florida Civil Rights Act, Florida Statute §760, et. seq., as separately set forth herein.
2. WALKER was employed by Defendant JSO for the past nine (9) years.
3. WALKER resides in Duval County, Florida and is otherwise sui juris.
4. Defendant is a municipal corporation with its principal place of business in Duval County, Florida.

5. Venue is proper in Duval County, Florida, insofar as the incidents occurred in Duval County, Florida and that the Defendant JSO, at all times material hereto, operated in Duval County and employed WALKER therein.

6. This Court has federal question jurisdiction over the Plaintiff's retaliation claims in this matter insofar as the matter involves a violation of 42 U.S.C. §2000e, Title VII, and 42 U.S.C. §1981, et seq., §1983 and the Civil Rights Act of 1866. This matter also involves supplemental jurisdiction over the Plaintiffs' state law claims under the Florida Civil Rights Act, Fla. Sta. §760. et seq.

**WALKER'S EMPLOYMENT HISTORY**

7. Plaintiff WALKER is an African American male who began his employment with the Defendant JSO in July of 2004.

8. At the time his employment began, JSO advised him that he could start as a police bailiff, but that JSO would offer him a police officer position as soon as a spot became available.

9. WALKER's position as police bailiff was classified as a temporary, part-time position; however, he was regularly required to work forty (40) hours a week with no medical benefits or pension rights.

10. In October of 2005, JSO came out with a judicial officer program which the JSO required WALKER to sign up for. As a result of this change in position, $2.00 per hour was deducted from his hourly pay and he was forced to give up the right to promotions and salary increases.

11. While police bailiffs can apply for or post for sergeant or lieutenant positions within the Sheriff's Office or the Duval County Courthouse, judicial officers cannot apply for or post for these positions.

12. WALKER, as a judicial officer, was not offered the same training that police officers and corrections officers have available; however, WALKER was held to the same standards.

13. WALKER, as a judicial officer, had the same duties as police bailiffs and had the same certifications as police bailiffs; however, he was paid substantially less.

14. On June 14, 2010, Major Steven Weintraub, assigned WALKER to "second holding" in the Duval County Court House. This was a highly undesirable position.

15. Officers in second holding are routinely rotated every week due to the unusually harsh conditions; however, Major Weintraub assigned WALKER to this position permanently.

16. Throughout his employment, WALKER was subjected to disparate treatment and retaliation, including disparate and discriminatory application of the company's policies including, but not limited to: discipline, pay, anti-retaliation, and anti-harassment.

**WALKER FILES A CHARGE OF DISCRIMINATION**

17. As a result of this disparate treatment, in March of 2011, WALKER filed a Charge of Discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC") and Florida Commission on Human Relations, Palm Beach County Office of Equal Opportunity ("FCHR") (Charge # 15E-2011-00143) (the "Original Charge"). A true and correct copy of the Charge is attached hereto as **Exhibit A**.

## WALKER BECOMES THE SUBJECT OF RETALIATION

18. After Walker filed the Original Charge, he was subjected to continuing retaliation at the hands of JSO.

19. In April of 2011, Chief Burton, Major Steven Weintraub (Walker's supervisor), and Sergeant Thomas brought Carla Sandoval to their office at the Police Memorial Building for a meeting. They asked Sandoval to sign a statement saying that WALKER was sexually harassing her, which was false. Sandoval refused to sign the statement and informed WALKER about their actions.

20. On or about July 7, 2011, Major Weintraub falsely accused WALKER of conduct unbecoming of an officer. Specifically, Major Weintraub alleged that WALKER deliberately attempted to get an inmate beat up. These charges were false and later dropped.

21. On or about October 12, 2012, WALKER was placed on desk duty while internal affairs investigated another fabricated charge of conduct unbecoming of an officer. This charge resulted from WALKER sending a disruptive inmate back to the jail, which is, in fact, how JSO trained WALKER to handle unruly inmates.

## WALKER FILES COMPLAINT WITH FLORIDA COMMISSION ON ETHICS

22. On November 15, 2012, as a result of the retaliation and continued discrimination, WALKER filed a complaint with the Florida Commission on Ethics. A true and correct copy is attached hereto as **Exhibit B**.

## THE RETALIATION CONTINUES

23. On December 31, 2012, Internal Affairs took WALKER's badge and gun for an alleged incident that occurred at the Duval County Courthouse over the weekend. WALKER did not even work at the courthouse over the weekend.

24. On January 2, 2013, a mass e-mail, with WALKER's photo attached, was sent to all department employees indicating that he was on the "watch list" due to misconduct. A true and correct copy of this e-mail is attached hereto as **Exhibit C**. Indeed, none of the investigations conducted by JSO had proven misconduct.

## WALKER FILES SECOND CHARGE OF DISCRIMINATION

25. As a result of the retaliatory actions taken by JSO after WALKER filed his Original Charge, on or about January 7, 2013, WALKER filed a Second Charge of Discrimination with the EEOC and FCHR (Charge # 15E-2013-00063) (the "Second Charge"). A true and correct copy of the Second Charge is attached hereto as **Exhibit D**.

## WALKER IS TERMINATED

26. On February 22, 2013, WALKER was suspended from the JSO for conduct unbecoming of an officer. Specifically, WALKER was suspended for the incident which occurred on or about October 12, 2012, whereby WALKER sent a disruptive inmate back to the jail, as he was trained to do.

27. On April 22, 2013, WALKER was terminated as a result of this incident.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

28. As stated above, Plaintiff filed a Charge of Discrimination with EEOC and the FCHR on two separate occasions. *See* Exhibits A and D.

29. WALKER has exhausted his administrative remedies as they relate to these below causes of action in that the EEOC issued a Right to Sue letter dated September 19, 2013. A true and correct copy of the right to sue letter is attached hereto as **Exhibit E**.

30. More than 180 days have passed since the Charge was filed for the claims under the FCRA.

**COUNT I – RETALIATION**
**IN VIOLATION OF TITLE VII**

WALKER adopts the allegations contained in paragraphs 1 through 30 above.

31. Defendant is an employer as defined in TITLE VII.

32. WALKER began his employment with Defendant in July of 2004.

33. Defendant terminated WALKER's employment on April 22, 2013.

34. During WALKER's employment, he complained on numerous occasions about discrimination by his supervisor, Major Weintraub.

35. Despite said complaints, Defendant JSO failed to take any remedial action.

36. As a result, Defendant WALKER filed the Original Charge with the EEOC on March of 2011. *See* Exhibit A.

37. After filing the Original Charge, WALKER was subjected to retaliation, including, but not limited to: false accusations and unnecessary discipline.

38. On November 15, 2012, WALKER filed a complaint with the Florida Commission on Ethics as a result of the retaliation and continuing harassment. *See* Exhibit B.

39. JSO's discriminatory and retaliatory treatment of WALKER worsened as a result.

40. On January 2, 2012, WALKER filed the Second Charge with the EEOC for Retaliation. *See* Exhibit D.

41. Shortly thereafter, as detailed above, WALKER was suspended and then terminated.

42. WALKER contends that Defendant's adverse treatment was in retaliation for his complaints of discrimination.

43. As a result of the retaliatory treatment, Plaintiff suffered harm.

44. Defendant knew or should have known that Plaintiff was being discriminated against and being treated differently and more harshly than other similarly-situated Caucasian employees by the Defendant and their agents, employees and/or representatives.

45. Plaintiff's complaints constitute protected activity.

46. Plaintiff's complaints and the retaliatory treatment are causally related. Furthermore, Plaintiff's complaints and his subsequent retaliatory treatment occurred in close temporal proximity.

47. By and through the conduct described above, Defendant permitted a pattern and practice of unlawful racial discrimination by permitting Plaintiff to be subjected to continuing retaliatory treatment on the basis of race in violation of the FCRA.

48. Plaintiff is informed and believes and based thereon alleges, that in addition to the practices enumerated above, Defendant may have engaged in other discriminatory practices which are not yet fully known. At such time as the discriminatory practices become known, Plaintiff will seek leave of the Court to amend the Complaint in this regard.

49. Plaintiff has suffered damages as a result of Defendant's conduct, by and through its agents, employees and/or representatives.

50. As a result of the Defendant's violations, WALKER has suffered damages.

51. As a direct and proximate result of the intentional and discriminatory acts and practices of the Defendant, and/or its employees, including the discriminatory discharge of WALKER's employment, WALKER suffered injury and continues to suffer injury including past and future loss of income and other employment benefits, emotional pain and suffering, mental anguish, humiliation, loss of enjoyment of life, embarrassment, damage to her reputation and other past and future pecuniary losses.

52. Plaintiff requests that he be awarded reasonable attorney's fees and costs of suit pursuant to 42 U.S.C. § 2000(e), Title VII.

53. As a further result of Defendant's conduct, Plaintiff has retained the undersigned law firm as his counsel and is obligated to pay a reasonable fee.

WHEREFORE, Plaintiff prays that judgment be entered in his favor against the Defendant, JSO, as follows: That Plaintiff be awarded general and compensatory damages, reinstatement, or front pay, back pay, prejudgment interest; that Plaintiff be awarded reasonable attorney's fees and costs pursuant to Title VII; that Plaintiff be awarded such other relief as the Court deems just and proper. Plaintiff further demands trial by jury.

**COUNT II – RETALIATION**
**IN VIOLATION OF 42 U.S.C 1981,1981(A) & §1983**

WALKER adopts the allegations contained in paragraphs 1 through 30 above.

54. Defendant engaged in racially discriminatory conduct towards WALKER such that he was deprived of his civil rights.

55. Defendant is an employer within the meaning of 42 U.S.C. §1981 and §1983.

56. WALKER is an African-American male, subject to the protections of 42 U.S.C. §1981 and §1983.

57. Since making said complaints, WALKER has been subjected to retaliation, including unwarranted discipline and termination.

58. Specifically, Plaintiff was subject to adverse employment treatment including failure to redress harassment, continued harassment, unwarranted discipline and termination.

59. Plaintiff contends that his termination is in retaliation for these complaints.

60. Plaintiff has exhausted all administrative remedies prior to bringing this lawsuit.

61. Plaintiff engaged in a protected activity by filing Charges of Discrimination with the EEOC.

62. By and through the conduct described above, Defendant permitted a pattern and practice of unlawful retaliation by allowing Plaintiff to continue to be subjected to disparate treatment and discrimination in violation of 42 U.S.C. §§1981,1981(a) and §1983

63. Plaintiff contends that Defendant CITY has a policy and pattern and practice of treating similarly-situated, Caucasian employees more favorably than African-American employees.

64. Plaintiff contends that Defendant CITY applies employment policies such as: payment of wages, promotion/demotion, anti-discrimination, discipline and termination in a disparate manner.

65. Plaintiff complained of the discriminatory treatment to no avail.

66. Defendant failed to acknowledge the discriminatory treatment of Plaintiff or Plaintiff's complaints of discrimination.

67. Defendant knew or should have known that Plaintiff was being discriminated against and being treated in a manner disparate and less favorable than other similarly-situated Caucasian employees by the Defendants, agents, employees and/or representatives.

68. Despite said knowledge, Defendant failed to take any remedial action.

69. By and through the conduct described above, Defendant permitted a pattern and practice of unlawful discrimination by permitting Plaintiff to be subjected to continuing disparate treatment on the basis of race in violation of 42 U.S.C. §1981 and §1983

70. Plaintiff is informed and believes and based thereon alleges, that in addition to the practices enumerated above, Defendant JSO may have engaged in other discriminatory practices which are not yet fully known. At such time as the discriminatory practices become known, Plaintiff will seek leave of the Court to amend the Complaint in this regard.

71. Plaintiff has suffered damages as a result of JSO's conduct, by and through its agents, employees and/or representatives.

72. As a result of JSO's conduct, Plaintiff has suffered general and compensatory damages.

73. As a further result of Defendant's conduct, Plaintiff has retained the undersigned law firm and is obligated to pay a reasonable fee.

74. Plaintiff requests that he be awarded reasonable attorney's fees and costs of suit pursuant to 42 U.S.C. §§1981, 1981(a) and §1983

WHEREFORE, Plaintiff prays that judgment be entered in his favor against Defendant JSO as follows: That Plaintiff be awarded general and compensatory damages, reinstatement, or front pay, back pay, that Plaintiff be awarded reasonable attorney's fees and costs pursuant to 42 U.S.C. §§1981, 1981(a); and §1983 that Plaintiff be awarded such other relief as the Court deems just and proper. Plaintiff further demands trial by jury.

**COUNT III - RETALIATION**
**N VIOLATION OF THE FLORIDA CIVIL RIGHTS ACT §760.10**

WALKER adopts the allegations contained in paragraphs 1 through 30.

75. Defendant is an employer as defined in the Florida Civil Rights Act ("FCRA").

76. During WALKER's employment, he complained on numerous occasions about discrimination by his supervisor, Major Weintraub.

77. Despite said complaints, Defendant JSO failed to take any remedial action.

78. As a result, Defendant WALKER filed the Original Charge with the EEOC on March of 2011. *See* Exhibit A.

79. After filing the Original Charge, WALKER was subjected to retaliation, including, but not limited to: false accusations and unnecessary discipline.

80. On November 15, 2012, WALKER filed a complaint with the Florida Commission on Ethics as a result of the retaliation and continuing harassment. *See* Exhibit B.

81. JSO's discriminatory and retaliatory treatment of WALKER worsened as a result.

82. On January 7, 2012, WALKER filed the Second Charge with the EEOC for Retaliation. *See* Exhibit D.

83. Shortly thereafter, as detailed above, WALKER was suspended and then terminated.

84. WALKER contends that Defendant's adverse treatment was in retaliation for his complaints of discrimination.

85. As a result of the retaliatory treatment, Plaintiff suffered harm.

86. Defendant knew or should have known that Plaintiff was being discriminated against and being treated differently and more harshly than other similarly-situated Caucasian employees by the Defendant and their agents, employees and/or representatives.

87. Plaintiff's complaints constitute protected activity.

88. Plaintiff's complaints and the retaliatory treatment are causally related. Furthermore, Plaintiff's complaints and his subsequent retaliatory treatment occurred in close temporal proximity.

89. By and through the conduct described above, Defendant permitted a pattern and practice of unlawful racial discrimination by permitting Plaintiff to be subjected to continuing retaliatory treatment on the basis of race in violation of the FCRA.

90. Plaintiff is informed and believes and based thereon alleges, that in addition to the practices enumerated above, Defendant may have engaged in other discriminatory practices which are not yet fully known. At such time as the discriminatory practices become known, Plaintiff will seek leave of the Court to amend the Complaint in this regard.

91. Plaintiff has suffered damages as a result of Defendant's conduct, by and through its agents, employees and/or representatives.

92. As a result of the Defendant's violations, WALKER has suffered damages.

93. As a direct and proximate result of the intentional and discriminatory acts and practices of the Defendant, and/or its employees, including the discriminatory discharge of WALKER's employment, WALKER suffered injury and continues to suffer injury including past and future loss of income and other employment benefits, emotional pain and suffering, mental anguish, humiliation, loss of enjoyment of life, embarrassment, damage to her reputation and other past and future pecuniary losses.

94. In addition to damages, WALKER seeks reimbursement of her reasonable attorney's fees and costs, pursuant to the Fla. Stat. § 760.10.

95. As a further result of Defendant's conduct, Plaintiff has retained the undersigned law firm as his counsel and is obligated to pay a reasonable fee.

WHEREFORE, Plaintiff, WALKER, prays that judgment be entered in his favor against the Defendant as follows: That Plaintiff be awarded general and compensatory damages and reinstatement, front pay and back pay, and prejudgment interest; that Plaintiff be awarded reasonable attorney's fees and costs pursuant to the FCRA §760.10; that Plaintiff be awarded such other relief as the Court deems just and proper. Plaintiff further demands trial by jury.

**JURY TRIAL DEMAND**

Plaintiff demands a trial by jury on all issue so triable.

Respectfully submitted this 13th day of December 2013.

Cathleen Scott, Esq.
Florida Bar No. 135331

Primary e-mail: CScott@floridalaborlawyer.com
Secondary e-mail: mail@floridalaborlawyer.com
Danielle Lassiter
Florida Bar No. 72071
Primary e-mail: DLassiter@csapalaw.com
Secondary e-mail: mail@floridalaborlawyer.com
CATHLEEN SCOTT & ASSOCIATES, P.A.
Jupiter Gardens
250 South Central Boulevard
Suite 104-A
Jupiter, FL 33458
Telephone: (561) 653-0008
Facsimile: (561) 653-0020
Secondary Address: 101 Northpoint Parkway
West Palm Beach, FL 33407
www.FloridaLaborLawyer.com